IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **LIFESTYLE TEXAS MANAGEMENT SERVICES, LLC, LIFESTYLE TEXAS MEDICAL MANAGEMENT, LLC and CHRISTOPHER SMITH**<br>     Plaintiffs | § § § § § § § | |
| v. | § § | Civil Action No. 4:19-cv-2201 |
| **AVENTUS HEALTH, LLC,<br>AVENTUS OUTREACH, LLC,<br>AVENTUS ENTERPRISE, LLC,<br>AVENTUS BILLING, LLC,<br>AVENTUS BIO LABS, INC.,<br>ABL MEDICAL CARE, INC.,<br>MEDCI, LLC,<br>AVENTUS TECHNOLOGIES, LLC,<br>NAGI YOUSSEF,<br>OLIVER DAWOUD,<br> and TAMER GIRGIS**<br>     Defendants | § § § § § § § § § § § § § | **JURY DEMANDED** |

### PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COME NOW Plaintiffs, **Lifestyle Texas Management Services, LLC LIFESTYLE TEXAS MEDICAL MANAGEMENT,  LLC ("Lifestyle")** and **Christopher Smith ("Smith")**, in the above styled and numbered cause of action complaining of Defendants, **Aventus Health, LLC, Aventus Bio Labs, Inc., ABL Medical Care, Inc., Medci, LLC, (herein after collectively referred to as "Health"), Aventus Outreach, LLC, ("Outreach"), Aventus Enterprise, LLC, Aventus Technologies, LLC, (herein after collectively referred to as "Enterprise"), Aventus Billing, LLC, ("Billing"), Nagi Youssef ("Yousef"), Oliver Dawoud ("Dawoud")** and **Tamer Girgis ("Girgis"), (herein after all Defendants are collectively referred to as "Defendants",**

**"Aventus" or "Aventus Defendants")** and for good and sufficient cause of action, Plaintiffs would respectfully show unto this Honorable Court the following:

## I. PARTIES

1. Plaintiff Lifestyle are Texas limited liability corporations, organized and duly formed under the laws of state of Texas, with their principal places of business located in this District.

2. Plaintiff Smith is an individual and resident of Florida.

3. At all times relevant hereto Defendants Health are foreign for-profit corporations that were incorporated under the laws of the state of Florida, with their principal place of business in Florida, who sought Plaintiffs' products and services while doing business in Texas. Defendants Health may be served with summons and complaint in this matter by serving its registered agent, Nagi Youssef at 1073 Willa Spring Dr., Ste. 1049, Winter Springs, FL 32765 or wherever he may be found.

4. At all times relevant hereto Defendant Outreach was a foreign for-profit corporation that was incorporated under the laws of the state of Florida, with its principal place of business in Florida, and who sought Plaintiffs' products and services while doing business in Texas. Defendant Outreach may be served with summons and complaint in this matter by serving its registered agent, Oliver Dawoud at 1073 Willa Spring Dr., Ste. 1049, Winter Springs, FL 32765 or wherever he may be found.

5. At all times relevant hereto Defendants Enterprise are foreign for-profit corporations that were incorporated under the laws of the state of Florida, with their principal place of business in Florida and who sought Plaintiffs' products and services while doing business in Texas. Defendants Enterprise may be served with summons and complaint in this matter by

serving its registered agent, David Schick at 200 South Orange Ave., Ste. 2300, Orlando, FL 32801 or wherever he may be found.

6. At all times relevant hereto Defendant Billing was a foreign for-profit corporations that was incorporated in the state of Florida, with its principal place of business in Florida and who sought Plaintiffs' products and services while doing business in Texas. Defendant Billing may be served with summons and complaint in this matter by serving its registered agent, Tamer Girgis at 1073 Willa Springs Dr., Ste. 2005, Winter Springs, FL 32708 or wherever he may be found.

7. Plaintiffs are informed and believe that Defendant Youssef, is and at all times relevant hereto was, an individual, natural person and the principal/owner of Defendants Health, Enterprise and Billing and may be served with summons and complaint in this matter at 1073 Willa Spring Dr., Ste. 1049, Winter Springs, FL 32765 or wherever he may be found.

8. Plaintiffs are informed and believe that Defendant Dawoud, is and at all times relevant hereto was, an individual, natural person and the principal/owner of Defendants Outreach and may be served with summons and complaint in this matter at 1073 Willa Spring Dr., Ste. 1049, Winter Springs, FL 32765 or wherever he may be found.

9. Plaintiffs are informed and believe that Defendant Girgis, is and at all times relevant hereto was, an individual, natural person and the principal/owner of Defendants Outreach and may be served with summons and complaint in this matter at 1073 Willa Spring Dr., Ste. 1049, Winter Springs, FL 32765 or wherever he may be found.

10. Plaintiffs are further informed and believe that the Aventus Defendants were separately organized according to the type of provider-source and/or payor source, whether it was in-network or out-of-network (which will be subject to discovery). Nevertheless, at all times relevant hereto the Defendants held themselves out as one and same entity acting in concert with

each other vis-à-vis Plaintiffs for purposes of their business dealings. Plaintiffs are informed and believe that the Aventus Defendants are alter egos of each other for the purposes of carrying deceit and injustices to Plaintiffs. At all times relevant hereto each of the Aventus Defendants acted under the banner and trade name of Aventus Biolabs a/k/a AventusBiolabs.com.

## II. JURISDICTION AND VENUE

11. The Court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) because Defendants are incorporated in a foreign state and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. The Court has both general and specific personal jurisdiction over Defendants. The Court has general jurisdiction over Defendants, as Defendants have sufficient minimum contacts with and within this State and have purposefully availed themselves of the privilege of conducting activities within this State, thus invoking the benefits, protections, and obligations of this State's laws. Defendants' contacts with this State, which are continuous and systematic, include doing business in Texas, entering into contracts in Texas related to Texas citizens and/or businesses, and accepted the benefits of the contracts in Texas.

12. Defendants' contacts with Texas, relied upon by Plaintiffs, were purposeful and were not random, fortuitous, or attenuated, and are thus subject to the jurisdiction of this State in suits based on these activities. The Court has jurisdiction over Defendants because: (1) Defendants purposefully availed themselves of the benefits of conducting activities in Texas, and (2) the cause of action arises from or relates to those contacts or activities.

13. The Court has specific jurisdiction over this matter as it involved the execution, performance, and breach of a contract with Plaintiffs. As a matter of law, Defendants conducted business in this State because, without limitation, Defendants conducted business in Texas and committed one or more torts and/or violated statutory and/or common laws, in whole or in part in

this State, against Plaintiffs in Harris County, Texas. Defendants have sufficient and/or minimum contacts with this State, and thus Plaintiffs affirmatively assert the Court's exercise of jurisdiction over Defendants comports with "traditional notions of fair play and substantial justice."

14. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Texas. As set forth more fully below, venue in the Southern District of Texas is proper because Defendants are doing business in Texas, a breach by Defendants occurred in Harris County, Texas and because Defendants have sufficient ties to the United States. The Southern District of Texas has a connection to the parties, several of the witnesses and the majority of the facts of this civil action. The Southern District of Texas will: 1) allow ease of access to sources of proof; 2) have the ability to subpoena non-party fact witnesses; 3) minimize the cost of attendance for willing witnesses; and 4) reduce other practical problems that make the trial of a civil action easy, expeditious and less expensive. In addition, the Southern District of Texas will: 1) not have administrative difficulties due to court congestion; 2) have an interest in deciding the matters set forth in this civil action; 3) be familiar with adjudicating commercial disputes; and 4) not encounter unnecessary problems of conflict of laws or in the application of foreign law.

### III. FACTUAL ALLEGATIONS

15. On or about late January of 2017, Defendants entered into the Agreement with Plaintiffs, having full knowledge that they were engaging a Texas based business entity who had special relationships with Texas-based medical providers. Until July 1st, 2018, both Plaintiffs and Defendants conducted themselves as if bound by the Agreement. Defendants promised to pay Plaintiffs a Fair Market Value ("FMV") analysis for Plaintiffs' management of Plaintiffs' medical provider provided specimens. At all times relevant hereto the Defendants knew that the primary

and majority source of Plaintiffs' medical provider provided specimens were from Texas medical providers. Between January 2017 and July 2018, Plaintiffs managed and delivered to Defendants approximately 550-1100 of the Plaintiffs' medical provider provided specimens per month. Plaintiffs expended a large amount of resources, time and money in providing Plaintiffs' management services, billing and collection services, contracting services, advertising and marketing services, analytical services, technology and system management services, training and support services. Plaintiffs provided these services with an FMV average of one hundred thirty-two thousand five hundred eighty-three dollars ($132,583.00) per month of Plaintiffs' management services.

16. On or about late June of 2018, Defendants, without cause abruptly terminated relations with Plaintiffs. Under the Agreement, Defendants were obligated to pay Plaintiffs for Plaintiffs' general management services including but not limited to compensation for management services, billing and collection services, contracting services, advertising and marketing services, analytical services, technology and system management services, training and support services and late fees. Because Defendants would routinely pay Plaintiffs three months after Plaintiffs' general management services were performed, Defendants' abrupt termination of their contractual relationship with Plaintiffs, resulted in Defendants' having an outstanding balance.

17. Since July of 2018, Plaintiffs have made repeated demands and attempts to collect the outstanding balance owed by Defendants. Defendants outstanding balance remains unpaid.

18. Acknowledging the outstanding balance and in an attempt to appease Plaintiffs and further delay payment to Plaintiffs, on or about early August of 2018, Defendant Youssef approved a check in the amount of $50,000.00. This check was a purported good faith partial payment

towards the outstanding balance and came with a promise that the remainder of the outstanding balance was forth coming. Unfortunately, this partial payment check was Defendants' last payment to Plaintiffs, leaving an outstanding balance of $464,040.00. This outstanding balance represents unpaid compensation for Plaintiffs' management services for 2 weeks in March 2018, and the months of April 2018, May 2018 and June 2018.

19. On or about late September of 2018, Plaintiffs met with Defendants Youssef and David Girgis, Defendant's in-house counsel, regarding the outstanding balance. During this meeting, Defendant Youssef, once again acknowledging the outstanding balance, proposed and offered a payment plan to Plaintiffs. Plaintiffs accepted Defendants' offered payment plan. The proposed payment plan required Defendants to pay Plaintiffs a first payment on October 1st, 2018 of $30,000.00 and a second payment of $5,000.00 on October 15th, 2018. The offered payment plan further required Defendants to make recurring payments of $30,000.00 on the 1st and a $5,000.00 payment on the 15th of every subsequent month, until the outstanding balance was paid in full. Defendants failed to make any of the offered payment plan payments. Defendants outstanding balance remains unpaid.

20. Between September 2018 and January 2019, Plaintiffs made repeated demands and requests to Defendants for payment of the unpaid balance. On or about early November 2018 Defendants represented and promised to tender payment of the outstanding balance, if Plaintiffs were to obtain and present an FMV analysis for services Plaintiffs had already provided and that Defendants had already accepted to date. Despite having a history of payment from Defendants to Plaintiff, for the managerial services that Defendants now claim they needed an FMV analysis to make payment on, Plaintiffs relented and agreed to obtain and present an FMV analysis to Defendants in order to get paid.

21. In a final attempt and despite being continuously and repeatedly lied to, on or about early January of 2019, Plaintiffs obtained an FMV analysis and presented the FMV analysis to Defendants. On or about mid to late January of 2019, Plaintiffs and Defendant Youssef met, discussed and reviewed the FMV analysis. During this meeting, Defendant Youssef stated that the FMV analysis looked "in order" , that he wanted David Girgis to review the FMV analysis and that Defendants would issue Plaintiffs a check for the outstanding balance. Defendants never issued this promised check. Plaintiffs never received the promised check. Defendants outstanding balance remains unpaid.

22. Plaintiffs now realize that Defendants had sent Plaintiffs on a fool's errand. Plaintiffs commissioned and procured an FMV analysis solely because Defendants represented they would pay Plaintiffs if Plaintiffs obtained and presented an FMV analysis. Despite Plaintiffs complying with Defendants demand, Defendants continued with their fraudulent charade denying Plaintiffs payment of the outstanding balance. Plaintiffs procured the FMV analysis justifiably relying on Defendants' promise to pay the remaining balance.  Plaintiffs determinately relied on Defendants' fraudulent and false misrepresentations. Defendants continue to deny Plaintiffs payment for management services already performed.

23. Defendants have knowingly and intentionally caused Plaintiffs to rely on these misrepresentations and statements to Plaintiffs' detriment. Defendants induced Plaintiffs to enter into a contractual relationship to provide managerial services never intending to fully pay Plaintiffs as promised.  In bad faith, Defendants repeatedly made excuses and sent Plaintiffs on a wild goose chase to talk to one person after another. Plaintiffs have performed managerial services for Defendants and have commission, obtained and presented an FMV analysis to Defendants.

Defendants have not paid Plaintiffs and have made misrepresentations and false statements with no intention of fulfilling their contractual duties to compensate Plaintiffs.

24. Plaintiffs have suffered economic damages in excess of $464,040.00 related to Defendants' wrongful conduct. Plaintiffs are informed that Defendants have collected millions of dollars because of Plaintiffs' management services. Defendants owe Plaintiffs the outstanding balance due of $464,040.00. To protect their rights, Plaintiffs have been forced to incur attorney's fees, expert fees and the costs of litigation that is anticipated to be in excess of $250,000.00 through the time of trial.

## IV. CONDITIONS PRECEDENT

25. All conditions precedents have been performed or have occurred.

## V. CAUSES OF ACTION

26. The Plaintiffs do hereby sue for actual damages under all theories of negligent misrepresentation, breach of implied contract, breach of oral contract, quantum meruit, unjust enrichment and suit for accounting.

### A. NEGLIGENT MISREPRESENTATION

27. Plaintiffs incorporates herein the facts and allegations of paragraphs 1-26.

28. Defendants made numerous false and material misrepresentations to Plaintiffs with the intent that these misrepresentations be relied upon by Plaintiffs. Defendants' misrepresentations to Plaintiffs include but are not limited to misrepresentations concerning payment for management services of Plaintiffs' medical provider provided specimens based on the FMV analysis of Plaintiffs' management services, which caused Plaintiffs to enter into a contractual relationship with Defendants and to provide managerial services for Defendant. Defendants also made misrepresentations stating Defendants would make payments according to

an offered payment plan. Additionally, Defendants made false and negligent misrepresentations by sending Plaintiffs on a fool's errand to get an FMV analysis in order to receive payment of the outstanding balance.

29. Defendants acted knowingly, intentionally and without regard for the truth, in dealing with Plaintiffs. Defendants knowingly and intentionally induced and caused Plaintiffs to provide managerial services without any intention of fully paying Plaintiffs for said services. Furthermore, Defendants acted without reasonable grounds to believe their alleged inability to pay Plaintiffs without the FMV analysis. Whereas, Plaintiffs were ignorant of Defendants' nefarious intentions and action when Plaintiffs rightfully acted in justifiable reliance in providing management services for Defendants and commissioning, obtaining and presenting the FMV analysis.

30. As a result, thereof Plaintiffs have been damaged $464,040.00.

## B. BREACH OF IMPLIED AND ORAL CONTRACT

31. Plaintiffs incorporates herein the facts and allegations of paragraphs 1-30.

32. On or about January 2017, Plaintiffs provided managerial services for Defendants. At that time Plaintiffs and Defendants entered into a contract.

33. As of June 2018, Plaintiffs provided an FMV average of $132,583.00 per month worth of management services, billing and collection services, contracting services, advertising and marketing services, analytical services, technology and system management services, training and support services to Defendants.

34. Whereas, Plaintiffs were not compensated for two weeks of March 2018, and the whole months of April 2018, May 2018 and June 2018. Defendants therefore owe Plaintiffs the

outstanding balance due of $464,000.00, based on Plaintiffs the FMV average for the management services provided by Plaintiffs, of $132,583.00 per month.

35. Defendants have breached the contract with Plaintiffs by failing and refusing to pay Plaintiffs for provided management services, for which damages amount to $464,000.00.

## C. QUANTUM MERUIT

36. Plaintiffs incorporates herein the facts and allegations of paragraphs 1-35.

37. Pleading additionally and alternatively, Plaintiffs sues for quantum meruit to recover the reasonable value of its management and services provided for Defendants. Services for which Plaintiffs have largely been denied compensation.

38. Plaintiffs spent a great deal of time, effort and expense providing managerial services for Defendants.

39. Defendants knew Plaintiffs expected compensation for Plaintiffs' management services. Defendants greatly underpaid Plaintiffs for their management services making Defendants liable to Plaintiffs for the reasonable fair market value of those management services, which is at least $464,000.00.

## D. UNJUST ENRICHMENT

40. Plaintiffs incorporates herein the facts and allegations of paragraphs 1-39.

41. Defendants have been unjustly enriched by taking and receiving Plaintiffs' management services provided for Defendants. Plaintiffs managed approximately 550-1100 medical provider laboratory specimens per month because Defendants promised, expressly and impliedly, to pay Plaintiffs for Plaintiffs' management services, billing and collection services, contracting services, advertising and marketing services, analytical services, technology and system management services, training and support services. Even though, Defendants have made

millions of dollars because of Plaintiffs' management services, Defendants continue to refuse to pay Plaintiffs any of its outstanding balance. As a remedy the Court should award Plaintiffs damages from Defendants in an amount of $464,040.00.

### E. SUIT FOR ACCOUNTING

42. Plaintiffs incorporates herein the facts and allegations of paragraphs 1-41.

43. Plaintiffs are entitled to an accounting from Defendants of all monies and property Defendants obtained and realized from Plaintiffs' management services that were provided to Defendants, including but without limitation, all billing and invoices therefor, claims made and submitted to payors, EOBs, the responses thereto, and payments received by Defendants.

## VI. JURY DEMAND

44. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

## VII. ATTORNEY'S FEES

45. Plaintiffs seeks recovery of its reasonable and necessary attorney's fees pursuant to all common law and/or statutory laws, including, but not limited to, Section 38.001, *et. seq.*, of the Texas Civil Practice and Remedies Code.

## VIII. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein, and, after due process of law, Plaintiffs have judgment against Defendants in actual damages, jointly and collectively, individually and severally, together with affirmative relief, pre-judgment interest, post-judgment interest, attorney's fees, expert fees, costs of suit, and such other and further relief, both general and special, in law and in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

LAW OFFICES OF MANUEL SOLIS, PC
6657 Navigation Blvd.
Houston, TX 77011
Phone: (713) 277-7838
Fax: (281) 377-3924

By: */s/ Stephen R. Walker*
Stephen R. Walker
Texas Bar No. 24034729
Email: swalker@manuelsolis.com
Gregory J. Finney
Texas Bar No. 24044430
Email: gfinney@manuelsolis.com

and

HUYNH & HUYNH, PLLC
7670 Woodway Drive, Suite 342
Houston, Texas 77063
Phone: 713-622-1111
Fax: 713-583-4578

Hieu Q. Huynh
Texas Bar No. 24104003
Email: hieu@huynhandhuynh.com

ATTORNEYS FOR PLAINTIFFS